## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| RENEE BELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-496 NAB |
| ) | |
| ARCHITECTURAL WOODWORK, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. (Doc. 49.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 13.) For the following reasons, the Court grants in part and denies in part Plaintiffs' Motion for Summary Judgment.

**I.      Procedural Background**

Plaintiffs Carpenters' Pension Trust Fund of St. Louis and the Trustees thereof ("Pension Fund" or "Plaintiffs") brought this action against Defendants Architectural Woodwork, Inc., Ahmann, LLC, and Wood Ventures Group, LLC for the collection of withdrawal liability under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1381, *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq.* ("MPPAA").

In their First Amended Complaint, Plaintiffs contend Defendant Architectural Woodwork, Inc. ("AWC") withdrew from the pension fund and thus is subject to withdrawal liability. Plaintiffs also contend Defendants Ahmann, LLC ("Ahmann") and Wood Ventures Group, LLC ("Wood Ventures") are part of a control group with AWC such that they are jointly and severally liable for

the withdrawal liability of AWC. Plaintiffs seek to recover withdrawal liability in the amount of $383,1570.00, interest, liquidated damages, costs, and reasonable attorneys' fees.

Plaintiffs moved for summary judgment against all three Defendants. (Doc. 49.) Defendant Wood Ventures Group, LLC filed an opposition. (Doc. 54.) Plaintiffs filed a reply. (Doc. 57.) Wood Ventures filed a sur-reply, and Plaintiffs filed a response to Wood Ventures' sur-reply. (Docs. 59-1, 60.) Defendants Architectural Woodwork, Inc. and Ahmann, LLC did not file an opposition or otherwise respond to Plaintiffs' summary judgment motion, and the time to do so has passed.

## II.     Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

## III.    Factual Background

The Court finds that the following facts, viewed in the light most favorable to Defendants, are material and undisputed for purposes of Plaintiffs' Motion for Summary Judgment.[1]

The Carpenters Pension Trust Fund of St. Louis ("Pension Fund") is a multi-employer pension plan within the meaning of the ERISA, 29 U.S.C. §§1002(2)(A) and (37)(A) which provides pension benefits to covered participants who meet the qualifications of such benefits. The Trustees of the Pension Plan are Albert Bond, Donald Brussel, Jr., Dan Neiswander, Todd Hake, Rocky Kloth, Scott Byrne, Keith Taylor, Craig McPartlin, Tod O'Donaghue, Robert Calhoun, Kevin Deptula, Jim Sauer, Tim Schoolfield and Greg Hesser.

AWC was party to collective bargaining agreements with the St. Louis-Kansas City Carpenters Regional Council ("Carpenters Union") which required it to make contributions to the Pension Fund. AWC was in the business of manufacturing custom woodwork, primarily for commercial and institutional projects. In or around 1986, James Ahmann Ryan acquired an ownership interest in AWC.

AWC went out of business due to a loss of customers. AWC's last payroll was January 22, 2016, which reflected work performed by five employees who were members of the Carpenters Union through January 19, 2016. When AWC ceased operations, Mr. Ryan owned 92% of AWC. From February 2016 to April 2016, AWC's inventory, equipment and office furnishings were sold at auction for a gross sales price of $313,189.00. As is further explained below, AWC transferred the $313,189.00 in auction proceeds to Wood Ventures.

Ahmann, LLC is a limited liability company owned by Mr. Ryan and his wife. The original purpose of Ahmann was to manage investments from an inheritance received by Mr. Ryan. At some point, Ahmann made a $20,000 loan to AWC and a $5,000 loan to AWC. In January 2016,

---

[1] The facts listed are undisputed by the parties or supported by appropriate citations to the record as required by Local Rule 4.01(E).

3

Ahmann began performing consulting work for Kirkwood Stair and Millwork ("Kirkwood Stair"). In January 2016, Ahmann performed work related to a custom wooden bar in a residence for which Kirkwood Stair was performing work. Ahmann billed Kirkwood Stair for this work, and was paid. Ahmann continued performing work on this project through April 2016. Ahmann worked on another project for Kirkwood Stair, and also worked on and received payment for a project for Waterhot Construction Company at Washington University's North and South Towers. Ahmann used the name "Wood Ventures Group" as a d/b/a name.

Wood Ventures Group, LLC is a limited liability company that was registered with the Missouri Secretary of State on December 16, 2015. Its Articles of Organization state that it was organized "for all valid business purposes." Since its formation on this date, James Ryan has own 100% of its stock. According to Mr. Ryan, Wood Ventures was created for the purpose of collecting a secured debt that AWC owed to Mr. Ryan. From approximately 2011 through 2014, Mr. Ryan loaned AWC approximately $2,000,000, including unpaid interest. A Security Agreement and UCC filing recorded AWC's debt owed to Mr. Ryan. Once AWC received the $313,189.00 in liquidation proceeds from selling assets at auction, this sum was transferred to Wood Ventures, and Wood Ventures transferred the sum to Mr. Ryan, who retained it for personal use. According to Mr. Ryan, he structured his repayment through Wood Ventures because he did not want to be identified to AWC's other creditors:

> It was assumed that unhappy creditors would be calling and talking to my attorney's office and asking well, been told they're not going to get paid because everything is going to go to the secured creditor. And the question is who's the secured creditor. And it was felt that I would rather have them answer that as Wood Ventures Group, LLC as opposed to Jim Ryan.

(Doc. 56, ¶ 4.)

AWC withdrew from the Pension Fund as of January 19 or 22, 2016. By letter dated April 15, 2016, the Pension Fund informed AWC that the Pension Fund calculated the withdrawal liability assessable to AWC to be $383,157. The Pension Fund requested full payment from AWC by May 1, 2016, or alternatively, the Pension Fund proposed a payment plan that allowed for quarterly payments with an 8% interest rate. AWC has not paid any of the assessed withdrawal liability.

By letter dated April 10, 2017, the Pension Fund's legal counsel advised Ahmann and Wood Ventures that it was the Pension Fund's position that these entities were members of a common control group with AWC, and thus were also liable for AWC's withdrawal liability. Wood Ventures denies that it is a member of a common control group with AWC.

By letter dated September 8, 2017, counsel for Ahmann and Wood Ventures requested that the Pension Fund review its determination that Ahmann and Wood Ventures were part of a common control group with AWC. By letters dated November 20, 2017 and January 29, 2018, counsel for the Pension Fund advised counsel for Ahmann and Wood Ventures that the request for review was considered by the Trustees of the Pension Fund and denied, and that the Pension Fund maintained its position that Ahmann and Wood Ventures were members of a common control group with AWC. Neither AWC nor Ahmann nor Wood Ventures requested arbitration of this determination pursuant to 29 U.S.C. § 1401.

**IV.     Discussion**

Plaintiffs seek summary judgment, arguing that Defendants are subject to withdrawal liability. Plaintiffs argue there is no dispute that AWC is subject to withdrawal liability. Plaintiffs then argue that Ahmann and Wood Ventures are part of a control group with AWC because they were trades or businesses under common ownership with AWC, and thus all Defendants are a

5

"single employer" under ERISA, 29 U.S.C. § 1301(b)(1), all jointly and severally liable for AWC's withdrawal liability.

### A.  ERISA and the MPPAA

ERISA was enacted in 1974 to ensure that employees who were promised pension benefits would receive those benefits on retirement. *PACE Indus. Union-Mgmt. Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 456-57 (M.D. Tenn. 2011) (citing *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988)). ERISA was amended in 1980 by the MPPAA, which responded to the problem of employers withdrawing from multiemployer pension plans when diminishing overall participation forced remaining employers to contribute at a higher level in order to meet the funds' past liabilities. *Id*. To address this problem, "[t]he MPPAA requires employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits." *Id*.

Relevant to this case, "complete withdrawal" is "when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). The amount of an employer's withdrawal liability is determined by a plan's trustees, who must show the employer was obligated to contribute to the plan under a collective bargaining agreement and that the employer has withdrawn from the plan. 29 U.S.C. §§ 1382, 1392(a). The amount of the withdrawal liability is determined according to a formula provided in 29 U.S.C. §§ 1381(b) and 1391. Once the employer's withdrawal liability is determined, the plan sponsor must, "as soon as practicable," notify the employer of the amount of liability and make a demand for payment. 29 U.S.C. §§ 1382, 1399(b)(1).

After receiving notice of withdrawal liability, the employer has ninety days to (i) request that the plan sponsor review "any specific matter" regarding the liability and payment schedule determination, (ii) "identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer," and (iii) provide the plan sponsor additional information. § 1399(b)(2)(A). If there is "any dispute ... concerning a determination made under sections 1381 through 1399 of this title," either party may initiate arbitration "within a 60-day period after the earlier of (A) the date of notification [of the plan sponsor's response to the request for review] ..., or (B) 120 days after the date of the employer's request [for review]." § 1401(a)(1). Alternatively, the parties may jointly initiate arbitration within 180 days of the initial demand for payment. *Id.*

These provisions set up a system in which "[arbitration] is the preferred method of dispute resolution ... and normally the initial step preceding judicial intervention." *PACE Indus.*, 805 F. Supp. 2d at 457 (quoting *Mason & Dixon Tank Lines*, 852 F.2d at 163). Interim payments must be made during the pendency of any such dispute, § 1399(c)(2), and if arbitration is not initiated, then the liability amount is "due and owing" pursuant to the schedule determined by the plan sponsor and may be collected by an action in a court of competent jurisdiction, § 1401(b)(1). The employer's failure to make a payment when due, and further failure to cure that delinquency, constitutes "default," and entitles the plan sponsor to the full and immediate payment of the outstanding amount of withdrawal liability plus accrued interest. § 1399(c)(5).

### B. Withdrawal Liability of Architectural Woodwork, Inc.

To prevail on their collection claim, Plaintiffs must show that: "(1) the Fund was a multiemployer pension plan ... and the Defendants were an employer for the purposes of ERISA, (2) the Fund notified the Defendants of their assessed liability, and (3) Defendants failed to timely

7

initiate arbitration." *PACE Indus*., 805 F. Supp. 2d at 458 (M.D. Tenn. 2011) (*quoting Hancock v. Cook Cnty. Waste & Recycling, Inc*., 2010 WL 1416978, at *7 (N.D. Ill. Apr. 5, 2010)) (*quoting Chicago Truck Drivers v. El Paso CGP Co*., 525 F.3d 591, 598 (7th Cir. 2008) (internal quotation marks omitted)).

No party disputes AWC's withdrawal liability. The uncontroverted facts establish that AWC was an employer and completely withdrew from the Pension Fund, which was a multiemployer pension plan. The Pension Fund provided and AWC received written notice that Plaintiffs assessed a withdrawal liability of $383,157.00 against AWC. AWC did not initiate arbitration to contest the Pension Fund's liability assessment. AWC has not paid the assessed withdrawal liability, nor has AWC opposed Plaintiffs' motion for summary judgment seeking an assessment of withdrawal liability, liquidated damages, interest, attorney fees, and costs. On these facts, the Court finds Plaintiffs are entitled to summary judgment on the issue of AWC's withdrawal liability.

### C. Withdrawal Liability of Ahmann, LLC and/or Wood Ventures Group, LLC

Plaintiffs seek to hold Ahmann and Wood Ventures jointly and severally liable for the withdrawal liability assessed against AWC. The question that remains for the Court is whether AWC, Ahmann, and Wood Ventures were a "single employer" within the meaning of ERISA, 29 U.S.C. §§ 1002(37)(B), 1301(b)(1).[2] The statute sets forth two requirements for a finding of

---

[2] Section 1301(b)(1) states:
> An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of Title 26. For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26.

29 U.S.C. § 1301(b)(1).

8

"single employer" status: the entities must be found to be "trades or business" and they must be "under common control."

### 1. Defendants' Failure to Arbitrate

As an initial matter, Plaintiffs argue that any challenge to Ahmann or Wood Ventures' status as an "employer" subject to withdrawal liability must be litigated before an arbitrator pursuant to ERISA and the MPPAA. Plaintiffs argue that because the defendants failed to arbitrate their status as control group members, they waived their right to contest their control group status here. The uncontroverted facts show that Plaintiffs sent written notice of their position that Ahmann and Wood Ventures were members of a common control group with AWC. Ahmann and Wood Ventures requested review of Plaintiffs' determination, and Plaintiffs responded that their request for review was considered by Plaintiffs and denied. Neither Ahmann nor Wood Ventures initiated arbitration of the withdrawal liability determination.

Under the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under section 1381 through 1399 of [title 29] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). However, the question of "whether an entity ever became an employer under the MPPAA is an issue properly addressed by a district court prior to arbitration of any remaining issues…." *Rheem Mfg. Co. v. Central States Southeast and Southwest Areas Pension Fund,* 63 F.3d 703, 705 (8th Cir. 1995), *cert denied,* 516 U.S. 1146 (1996). In *Rheem,* the Eighth Circuit explained that "[s]ince only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration." *Id.* Accordingly, the Court will review whether Ahmann and/or Wood Ventures are employers subject to withdrawal liability.

9

### 2. Common Control

"Trades or businesses under common control" include "brother-sister groups." 26 C.F.R. § 11.414(c)–2(a), (c), and (d). A brother-sister group exists when the same five or fewer persons own a controlling interest in each trade or business and those persons are in effective control of each trade or business.[3] 26 C.F.R. § 1.414(c)–2(c)(1).

It is undisputed that Mr. Ryan had a controlling interest in all three entities. He owned 92% of AWC at the time it went out of business. Mr. Ryan and his wife owned 100% of Ahmann.[4] Mr. Ryan owned 100% of Wood Ventures. Accordingly, Ahmann and Wood Ventures were under common control with AWC. The necessary inquiry, therefore, is narrowed to the question of whether Ahmann and Wood Ventures were each a "trade or business" within the meaning of § 1301(b)(1).

### 3. Trade or Business

The ERISA statutes do not define "trade or business," and the phrase has not been given a definitive, uniform definition by the Supreme Court. *See Commissioner of Internal Revenue v. Groetzinger,* 480 U.S. 23, 27, 107 S. Ct. 980 (1987) (observing that despite the widespread use of the phrase in the Internal Revenue Code, "the Code has never contained a definition of the words 'trade or business' for general application, and no regulation has been issued expounding its meaning for all purposes"). The Eighth Circuit has provided little guidance as to what constitutes a "trade or business" except to note that courts "have engaged in an essentially factual inquiry" to

---

[3] A "controlling interest" of a corporation means ownership of at least 80 percent of the total combined voting power of all classes of stock entitled to vote or of the total value of shares of all classes of stock. 26 C.F.R. § 1.414(c)–2(b)(2)(ii)(A). "Effective control" of a corporation means ownership of at least 50 percent of the total combined voting power of all classes of stock entitled to vote or of the total value of shares of all classes of stock. 26 C.F.R. § 1.414(c)–2(c)(2)(i).

[4] The spousal ownership interest does not preclude Ryan from being deemed the "sole" owner of Ahmann for common control purposes. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Rogers*, 843 F. Supp. 1135, 1142 (E.D. Mich. 1992) (citing 26 C.F.R. § 1.414(c)), *aff'd,* 14 F.3d 600 (6th Cir. 1993).

make the determination. *Vaughn v. Sexton*, 975 F.2d 498, 502 (8th Cir. 1992) (quoting *Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 894 n.6 (9th Cir. 1988)).

In interpreting the phrase "trade or business," courts are often guided by the statutory purpose of ERISA. *See, e.g., Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 943 F.3d 49, 56 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 372 (2020); *Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 607 (6th Cir. 2018); *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prod., LLC*, 706 F.3d 874, 878 (7th Cir. 2013). The purpose of ERISA is to prevent trades or businesses from limiting their responsibilities under ERISA by fractionalizing their business operations. *Pension Ben. Guar. Corp. v. Ctr. City Motors, Inc.*, 609 F. Supp. 409, 412 (S.D. Cal. 1984). As stated in the Senate report on ERISA, "[T]he committee, by this provision [§ 1301(b)], intends to make it clear that the coverage and antidiscrimination provisions cannot be avoided through separate corporations instead of separate branches of one corporation." S.Rep. No. 383, 93d Cong., 2d Sess. 43 (1974), U.S. Code Cong. & Admin. News 1974, p. 4639. The purpose of § 1301(b) was "to prevent the great personal tragedy suffered by employees whose vested benefits are not paid when pension plans are terminated." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 374, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). In accordance with this purpose, § 1301(b) utilizes control group liability to prevent businesses from "juggl[ing] their activities to eviscerate the termination liability provisions of ERISA." *Pension Benefits Guaranty Corp. v. Ouimet Corp.*, 470 F.Supp. 945, 955 (D. Mass. 1979).

Here, Plaintiffs and Wood Ventures both direct the Court to the "*Groetzinger* test" that has been adopted by the Seventh Circuit. *See Messina Prod., LLC*, 706 F.3d at 878 (citing *Groetzinger,*

11

480 U.S. at 35). The "*Groetzinger* test" requires that an activity must be performed (1) for the primary purpose of income or profit, and (2) with continuity and regularity, to be considered "trade or business." *Id.* In *Groetzinger,* the Court distinguished between "sporadic activity, a hobby, or an amusement diversion," on the one hand, and a trade or business, on the other. *Groetzinger,* 480 U.S. at 35.

In applying the *Groetzinger* test or in conducting a more general factual inquiry to determine whether a defendant is a trade or business, courts consider the relevance of several factors. While some courts find that "[g]enerally, formally recognized business organizations, such as LLCs, constitute trades or businesses under *Groetzinger.*" *RKN Concrete Construction, Inc. v. Laborers Pension Fund,* 2015 WL 1888513 at *9 (N.D. Ill. 2015), others have found that "[w]hile the organizational form of an entity is highly relevant to this inquiry, it is not always dispositive." *UFCW Local One Pension Fund v. Enivel Properties, LLC*, 791 F.3d 369, 374 (2d Cir. 2015); *see also Sun Capital Partners III, LP*, 943 F.3d at 59 (Courts must "look beyond how the parties label, or structure, themselves. . . [they] must rather look to the substance of the relationships."). Further, courts do not require that businesses be economically related in order to be commonly controlled trades or businesses. *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 641 (7th Cir. 2001); *Connors v. Incoal, Inc.*, 995 F.2d 245, 249 (D.C. Cir. 1993); *Lafrenz*, 837 F.2d at 895. "Although § 1301(b)(1) may apply regardless of whether there is a formal corporate structure, employees, or some sort of economic relationship with the withdrawing employer (such as leasing property or equipment to the withdrawing entity), courts have been much more likely to find a "trade or business" under § 1301(b)(1) if these factors are present. *Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*, 672 F. App'x 685, 686 (9th Cir. 2016). Courts also consider whether the defendant has mere ownership or possession of a property, which "without more is the hallmark

of an investment," and whether individuals are acting on behalf of the alleged trade or business. *See Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001) ("Actions of a person, such as negotiating leases, researching properties, maintaining or repairing properties, etc. are business or trade conduct and thus are appropriately considered in determining whether the continuity and regularity prong of *Groetzinger* is satisfied.").

In determining control group liability, the issue is whether the relationship existed *at the time of withdrawal*. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 880 (7th Cir. 2011) (analyzing the relationship at the time of withdrawal); *Teamsters Pension Tr. Fund of Philadelphia v. Brigadier Leasing Assocs.*, 880 F. Supp. 388, 396 (E.D. Pa. 1995) ("Withdrawal liability is imposed only on those trades and businesses that are under common control with the withdrawing employer on the date of withdrawal.").

With this framework in mind, the Court now considers whether Ahmann and Wood Ventures are "trades or businesses" under ERISA.

a. <u>Ahmann, LLC</u>

Plaintiffs contend Ahmann, LLC is a trade or business, and Ahmann has not argued otherwise. The record contains sufficient undisputed evidence for the Court to conclude that Ahmann operated as a trade or business. In his deposition, Mr. Ryan described the drafting and consulting services performed by Ahmann. The facts show Ahmann billed and was ultimately paid for the work done. Ahmann's activity included work performed in January 2016, before and at the same time as AWC's withdrawal.

For these reasons, the Court finds that AWC and Ahmann are under common control, and that Ahmann is jointly and severally liable for AWC's withdrawal liability. The Court grants summary judgment to Plaintiffs on this issue.

13

b.  Wood Ventures, LLC

Next, Plaintiffs contend Wood Ventures is a trade or business. Wood Ventures opposes Plaintiffs' motion on this issue. Notably, Wood Ventures does not directly contest that it is a trade or business; rather, Wood Ventures argues that Plaintiffs have failed to establish facts showing Wood Ventures is a trade or business. Specifically, Wood Ventures argues 1) Plaintiffs have not shown that Wood Ventures performed regular and continuous profit-generating activity, and 2) even if Wood Ventures was a trade or business, it did not engage in any activity during the relevant time period such that withdrawal liability cannot be imposed on Wood Ventures.

Wood Ventures' stated purpose was to receive the proceeds of AWC's liquidation and convey those proceeds to James Ryan, a secured creditor of AWC. Plaintiffs rely heavily on the fact that Wood Ventures is a limited liability company that filed Articles of Organization reflecting it was formed for "all valid business purposes." Plaintiffs also argue Wood Ventures "served as a conduit of $313,189.00," generating profit, and that creating Wood Ventures only to receive assets of the withdrawing employer was "subterfuge" to hide from AWC's creditors that the liquidation proceeds were going to Mr. Ryan. Plaintiffs argue this purpose falls within the "dissipation of assets" and "fractionalization of business operations" the MPPAA seeks to prevent. Lastly, Plaintiffs suggest that Wood Ventures was engaged in trade or business because Ahmann, LLC conducted business under the d/b/a "Wood Ventures Group."

In response, Wood Ventures states that organizing for "all valid business purposes" is a typical statement used by limited liability companies in their formation documents to ensure flexibility in the future, and not a factual statement as to the activities Wood Ventures was actually engaged in at the time of its organization. Wood Ventures argues that its one-time act of receiving the liquidation proceeds from AWC and transferring them to Mr. Ryan does not demonstrate any

14

activity for the primary purpose of income or profit. Finally, Wood Ventures argue that because its first and only activity (transferring funds from AWC to James Ryan from February through April 2016) occurred after AWC's withdrawal (in January 2016), Wood Ventures has not engaged in trade or business during the critical time period.

The Court finds that Plaintiffs have not presented sufficient facts to establish Wood Ventures is a trade or business. The fact that Wood Ventures is a formally organized limited liability company weighs in Plaintiffs' favor, but is not dispositive. *See Enivel Properties, LLC*, 791 F.3d at 374 ("The Fund would have us hold that because Enivel is organized in a particular way, its primary purpose is inherently to generate income or profit without regard for the entity's actual purpose. To the contrary, *Groetzinger* presents a holistic, fact-dependent inquiry that requires courts to examine the actions taken by the entity in addition to its formal status."). Although it is common for formal business organizations to operate with continuity and regularity, ordinarily for income or profit, here, the facts presented to the Court show very limited activity by Wood Ventures. It is undisputed that Mr. Ryan had a secured claim for amounts he personally loaned to AWC, and he created Wood Ventures to act as a secured creditor to collect the debt owed. There is no evidence to suggest AWC engaged in any other activity. Additionally, despite Wood Ventures being created in the month prior to AWC's withdrawal, Wood Ventures singular activity did not begin until February 2016, after AWC's withdrawal. Plaintiffs have not presented additional evidence related to Wood Ventures' purpose or operational activities, and this one-time transfer of funds is insufficient to demonstrate continuous or regular activity for the primary purpose of income or profit. A reasonable factfinder could determine that Wood Venture did not engage in sufficiently continuous and regular activity that constitutes a trade or business. The Court denies summary judgment to Plaintiffs on this issue.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment (Doc. 49) is **GRANTED in part** and **DENIED in part** as described herein.

**IT IS FURTHER ORDERED** that Plaintiffs are entitled to their claim for joint and several withdrawal liability against Defendants Architectural Woodwork, Inc. and Ahmann, LLC. In addition to withdrawal liability in the amount of $383,157.00, Plaintiffs are entitled to interest, liquidated damages, attorneys' fees, and costs in accordance with Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

**IT IS FURTHER ORDERED** that Plaintiffs are granted **thirty (30) days** from the date of this Order to submit a proposed computation of interest, liquidated damages, attorneys' fees, and costs and support therefor. Although the parties are highly encouraged to resolve any disputes regarding Plaintiffs' calculations informally, Defendants are granted **ten (10) days** from the date of the Plaintiffs' submission to file any objections.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of January, 2021.